IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JESSICA R.,

            Plaintiff,

        v.                                   Civil Action No.
                                          3:19-CV-1344 (DEP)

ANDREW SAUL, Commissioner of
Social Security,

              Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN & GORTON LAW FIRM     PETER A. GORTON, ESQ.
1500 East Main St.
P.O. Box 89
Endicott, NY 13761-0089

FOR DEFENDANT

HON. ANTOINETTE L. BACON        DANIEL TARABELLI, ESQ.
Acting United States Attorney      Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>ORDER</u>

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the

pleadings.[1]  Oral argument was heard in connection with those motions on

February 24, 2021, during a telephone conference conducted on the

record. At the close of argument, I issued a bench decision in which, after

applying the requisite deferential review standard, I found that the

Commissioner's determination resulted from the application of proper legal

principles and is supported by substantial evidence, providing further detail

regarding my reasoning and addressing the specific issues raised by the

plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench

decision, which has been transcribed, is attached to this order, and is

incorporated herein by reference, it is hereby

ORDERED, as follows:

1)      Defendant's motion for judgment on the pleadings is

---

[1]      This matter, which is before me on consent of the parties pursuant to 28
U.S.C. § 636(c), has been treated in accordance with the procedures set forth in
General Order No. 18. Under that General Order once issue has been joined, an action
such as this is considered procedurally, as if cross-motions for judgment on the
pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

GRANTED.

     2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

     3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     March 2, 2021
             Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JESSICA R.,

                    Plaintiff,

vs.                                        3:19-CV-1344

ANDREW SAUL,
Commissioner of Social Security,

                    Defendant.

------------------------------------------------------x

              *DECISION* held on February 24, 2021

           before the HONORABLE DAVID E. PEEBLES

           United States Magistrate Judge, Presiding



                 APPEARANCES (by telephone)

For Plaintiff:        LACHMAN, GORTON LAW FIRM
                      Attorneys at Law
                      1500 East Main Street
                      Endicott, NY 13761
                         BY:  PETER A. GORTON, ESQ.

For Defendant:        SOCIAL SECURITY ADMINISTRATION
                      Office of Regional General Counsel
                      15 Sudbury Street
                      Boston, MA 02203
                         BY:  DANIEL STICE TARABELLI, ESQ.




                 *Eileen McDonough, RPR, CRR*
           *Official United States Court Reporter*
                      *P.O. Box 7367*
                 *Syracuse, New York 13261*
                      *(315)234-8546*

*Decision - 2/24/2021 - 19-cv-1344*                    2

1       THE COURT:  Let me begin by thanking both counsel

2  for excellent presentations.  I enjoyed working with you.

3       Plaintiff has commenced this proceeding pursuant to

4  42, United States Code, Sections 405(g) and 1383(c)(3) to

5  challenge an adverse determination by the Commissioner of

6  Social Security.

7       The background is as follows.  Plaintiff was born

8  in July of 1991.  She is currently 29 years of age.  She was

9  25 years old at the time of the alleged onset -- or, the

10  amended alleged onset date of August 1, 2016.  Plaintiff

11  stands approximately 5-foot 2-inches in height, and has

12  weighed between 245 and 250 pounds at various points.

13  Plaintiff is single and has no children.  She lives in

14  Binghamton in an apartment with her mother.  Plaintiff is

15  right-handed.  She has no driver's license.

16       Plaintiff has a high school education.  She

17  received an IEP diploma and was in special education classes

18  where she was classified apparently as learning disabled.

19  She also attended two semesters at Broome Community College.

20  She did receive some accommodations due to her psychological

21  conditions at the college, and ultimately stopped going or

22  attending out of frustration.  Plaintiff also participated in

23  a Catholic Charities Work Training Program.

24       Plaintiff stopped working in August of 2015 while

25  she was undergoing work training in a cafe.  Her past work

1   includes as a cashier in various settings, a cleaner, and an

2   overnight stocker.  The Administrative Law Judge concluded

3   that none of those positions constituted substantial gainful

4   activity.

5          Plaintiff physically suffers from a lower back

6   issue, obesity, and hypertension.  The hypertension appears

7   to be medically controlled.  In terms of her back, an X-ray

8   from August 12, 2016, that appears at 390 of the

9   Administrative Transcript, showed moderate degenerative

10  spondylosis, meaning disc space narrowing and osteophyte

11  formation, at L1-L2, but no compression fracture.  The

12  impression is listed as, quote, "degenerative changes."

13         The plaintiff suffers from mental impairments that

14  have been variously described, and including as low

15  borderline intellectual functioning.  Testing at one point

16  revealed a full scale IQ of 70.  Bipolar disorder, borderline

17  personality disorder, schizo-affective disorder, adjustment

18  disorder with depressed mood.  She has a history of cutting,

19  suicide attempts and ideation, homicidal ideation, auditory

20  hallucination, paranoid delusions.

21         She treats primarily with UHS Primary Care where

22  she sees Physician Assistant Erica Hill and has since March

23  of 2016.  She has treated with Dr. Sobia Mirza, a

24  psychiatrist, who she sees one time per month and has for

25  roughly four years, as well as LMSW Megan Hagerbaumer, who

1   she also sees approximately one time per month and has for

2   four years.

3            As plaintiff's counsel pointed out, the record

4   reveals several hospitalizations for psychiatric conditions,

5   including October 13, 2014 to November 1, 2014, that's at 354

6   of the Administrative Transcript.  There is reference to

7   December 2, 2014 at 354 to 356.  April 25, 2016 to April 29,

8   2016, she was hospitalized, that's at 336 and 635, for

9   cutting her wrist.  She had been drinking and engaged in a

10  family argument which appears to have precipitated that

11  hospitalization.  She was hospitalized between June 28 and

12  June 30, 2016.  That's at 402 to 404, 333 to 336, and 635 of

13  the Administrative Transcript.  That was precipitated by

14  suicidal thoughts brought on because her ex-boyfriend moved

15  into the same apartment complex that she was living in with a

16  new girlfriend.  There were also hospitalizations in March of

17  2017 for suicidal thoughts.  That's at 400 and 635.  She was

18  apparently sent to the hospital by her psychiatrist.  She was

19  hospitalized in April, late April to early May of 2017,

20  that's at 398 and 638, with auditory hallucinations and

21  persecutory delusions.  Again hospitalized in January 2019

22  with suicidal and homicidal thoughts and depression.

23  Apparently that was precipitated by an argument with

24  plaintiff's aunt.

25            Plaintiff has been prescribed several medications,

1   including Citalopram, Metoprolol, Trazodone, Mirtazapine,

2   Olanzapine, Ibuprofen, Tylenol, Remeron, Celexa, Latuda, and

3   a muscle relaxant.

4            In terms of activities of daily living, plaintiff

5   is able to shower, dress, shop with her mother.  She does

6   some walking.  She does some laundry.  She does -- I'm sorry,

7   some cooking, not walking; I can't read my own notes.  Some

8   laundry.  She cleans, sweeps, mops, vacuums, takes out the

9   garbage, watches television, listens to music.  She smokes

10  approximately two cigarettes per day.

11           Procedurally, plaintiff applied for Title II and

12  Title XVI benefits on June 14, 2016, alleging an onset date

13  of January 1, 2013.  The onset date was later amended on

14  advice of counsel or with advice of counsel to August 1,

15  2016, which took out of play the Title II application,

16  leaving only the Supplemental Security Income, or SSI,

17  application.

18           A hearing was conducted on October 10, 2018, by

19  Administrative Law Judge Elizabeth Koennecke.  A supplemental

20  hearing with a vocational expert was conducted on March 11,

21  2019.  ALJ Koennecke issued a decision on March 19, 2019,

22  that was adverse to the plaintiff.  That became a final

23  determination of the Agency on September 17, 2019, when the

24  Social Security Administration Appeals Council denied

25  plaintiff's request for review.

*Decision - 2/24/2021 - 19-cv-1344*                    6

1        This action was commenced on October 31, 2019.  The

2  Commissioner does not argue that it is untimely, and it

3  appears to the Court that it is, in fact, timely.

4        In her decision, ALJ Koennecke applied the familiar

5  five-step sequential test for determining disability.

6        She found that plaintiff had not engaged in

7  substantial gainful activity since August 1, 2016.

8        At step two, ALJ Koennecke concluded that plaintiff

9  does suffer from mental impairments that have been variously

10  characterized, and she does not specify precisely what

11  impairments she is considering, although she does state that

12  plaintiff claims disability due to depression, learning

13  disability, schizophrenia, personality disorder, and bipolar

14  disorder in terms of the mental impairments.

15        At step three, ALJ Koennecke concluded that

16  plaintiff's conditions do not meet or medically equal any of

17  the listed presumptively disabling conditions set forth in

18  the Commissioner's regulations, specifically considering

19  listings 12.03, 12.04, 12.06 and 12.08, all of which address

20  mental impairments or psychological impairments.  The

21  conclusion was that the B criteria and the C criteria of

22  those regulations were not met.  She also considered listing

23  12.04 and found a low IQ, but no diminishment or deficits in

24  adaptive functioning.

25        At the next stage, ALJ Koennecke concluded that

1   plaintiff is capable of performing a full range of work at

2   all exertional levels, with the following limitations

3   addressing her mental or psychological impairments.  The

4   claimant has the very basic capacity to read, spell, or

5   perform mathematical calculations.  The claimant retains the

6   ability to:  Understand and follow simple instructions and

7   directions; perform simple tasks independently; maintain

8   attention and concentration for simple tasks; regularly

9   attend to a routine and maintain a schedule; handle simple,

10  repetitive work-related stress in that she can make

11  occasional decisions directly related to the performance of

12  simple tasks in a position with consistent job duties that

13  does not require the claimant to supervise or manage the work

14  of others; should avoid work requiring more complex

15  interaction or joint effort to achieve work goals, for

16  example, work performed alone except for normal supervision;

17  can have no contact with the public.

18          At step four, Administrative Law Judge Koennecke

19  concluded that plaintiff does not have any past relevant work

20  to consider, and thus proceeded to step five.

21          With the assistance of testimony from a vocational

22  expert, who was given a hypothetical that parallelled the

23  residual functional capacity finding, the Administrative Law

24  Judge concluded that plaintiff is capable of performing

25  available work in the national economy, and cited

1    representative occupations of hand packager, laundry worker,

2    and industrial cleaner, and thus concluded that plaintiff was

3    not disabled at the relevant times.

4           The standard of review, as the Commissioner has

5    argued, in this case is extremely deferential.  My job is to

6    determine whether correct legal principles were applied and

7    that the resulting determination is supported by substantial

8    evidence.  Substantial evidence, of course, is defined as

9    such relevant evidence as a reasonable mind would consider

10   sufficient to support a conclusion or finding.  The Second

11   Circuit Court of Appeals in *Brault versus Social Security*

12   *Administration Commissioner*, 683 F.3d 443, noted that the

13   test is extremely stringent, more so than the clearly

14   erroneous standard that lawyers are familiar with.  The Court

15   noted in *Brault* that under this standard once an ALJ finds

16   facts, those facts can be rejected only if a reasonable

17   fact-finder would have to conclude otherwise.

18          The plaintiff in this case raises two basic

19   contentions, both of which affect the step five

20   determination, because if accepted, the errors would result

21   in a finding that the hypothetical posed to the vocational

22   expert was flawed.  The first relates to the failure to find

23   a physical impairment at step two focusing on plaintiff's

24   lumbar back condition.  The second attacks the residual

25   functional capacity finding and the weighing of medical

1   opinions in the record.

2          Turning first to the step two determination, the

3   focus is on Dr. Jenouri's report, which appears at 386 to 389

4   of the Administrative Transcript, as well as the X-ray taken

5   on August 12, 2016.  That is reported at page 390.

6   Undoubtedly and undeniably the second step of the sequential

7   analysis is a modest step and a modest hurdle to surpass.

8   The governing regulation provides that an impairment or

9   combination of impairments is not severe if it does not

10  significantly limit claimant's physical or mental ability to

11  do basic work activities; 20 CFR Section 404.1521(a), and

12  there is a corresponding regulation in the Section 416

13  series.

14         The Second Circuit requirement is de minimis and

15  intended only to screen out the truly weakest of cases; *Dixon*

16  *versus Shalala*, 54 F.3d 1019 (2nd Cir. 1995).  However, the

17  mere presence of a disease or impairment, or establishing

18  that a person has been diagnosed or treated for disease or

19  impairment, is not by itself sufficient to establish a

20  condition as severe; *Coleman versus Shalala*, 895 F.Supp. 50

21  (S.D.N.Y. 1995).

22         The Administrative Law Judge rejected the

23  plaintiff's back injury as severe at page 18 and discussed

24  why.  The first question is, assuming that there is error at

25  step two, would the error be harmless.  Dr. Jenouri in his

1   opinion at page 389 found a moderate restriction in walking,

2   standing, sitting long periods, bending, stair climbing,

3   lifting, and carrying, which, of course, could have

4   potentially affect the residual functional capacity, but that

5   was given limited weight.  There is no exertional limitation

6   in the RFC.

7         As plaintiff argues, the three jobs specified in

8   the Administrative Law Judge's determination are all in the

9   medium exertional range.  Medium work involves lifting no

10  more than 50 pounds at a time with frequent lifting or

11  carrying of objects weighing up to 25 pounds.  The regulation

12  goes on to state, "If someone can do medium work, we

13  determine that he or she can also do sedentary and light

14  work."  20 CFR Section 404.1567(c).

15        The plaintiff relies on *Giddings* for the

16  proposition that -- *Giddings versus Astrue*, 333 F.App'x 649,

17  (2d Cir. 2009), for the proposition that Dr. Jenouri's

18  opinion, which stands uncontradicted by any other medical

19  opinion that would support the RFC, cannot be overridden

20  unless there is overwhelmingly compelling reasoning given.  I

21  note that the Commissioner in this and several other cases

22  has asked the Court to declare that the Second Circuit's

23  overwhelmingly compelling reasoning standard has been

24  abrogated, but I respectfully decline that invitation and

25  note that as recently as 2020 the Second Circuit was still

1   using that standard.

2          The defendant relies on *Pellam*; *Pellam versus*

3   *Astrue*, 508 F.App'x 87 (2d Cir. 2013).  That case is somewhat

4   distinguishable, though, because while the consultative

5   examiner's opinion was rejected in that case, the RFC finding

6   was actually consistent with the opinion.

7          As I indicated, the Administrative Law Judge at 18

8   and 19 gave Dr. Jenouri's opinion limited weight.  The

9   reasoning cited includes the fact that there was no

10  compression fracture revealed in the X-ray, there was

11  extremely conservative treatment demonstrated in the record.

12  Plaintiff treated her back condition with over-the-counter

13  medications, including Tylenol, Ibuprofen, and muscle

14  relaxers.  She in many instances described her pain as zero

15  on a scale of zero to ten, including at 435, 440, 445, 456,

16  467, and 624 of the Administrative Transcript.  She also

17  described at page 370 her condition, back condition is stable

18  without radiation.  She also apparently has engaged walking

19  and exercises.

20          So in terms of the step two argument, I find that

21  the reasoning cited by Administrative Law Judge Koennecke

22  meets the overwhelmingly compelling standard for discounting

23  Dr. Jenouri's opinion.

24          Turning to the second argument, the argument first

25  surrounds the residual functional capacity finding of the

1  Administrative Law Judge.  Claimant's RFC represents the

2  finding of the range of tasks she is capable of performing

3  notwithstanding the impairments at issue; 20 CFR Section

4  416.945(a).  An RFC determination is informed by

5  consideration of all of the relevant medical and other

6  evidence.  The ascertaining of an RFC details both assessment

7  of exertional capabilities as well as non-exertional

8  limitations or impairments.  And, of course, any RFC

9  determination must be supported by substantial evidence.

10        When it comes to weighing medical opinions, there

11  is also an overarching consideration that the weighing of

12  conflicting opinions in the first instance is a matter

13  entrusted to an Administrative Law Judge, under *Veino versus*

14  *Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  The mental and

15  cognitive issues are what is front and center in this case.

16  The weight to be given to medical opinions under the former

17  regulations governing applications filed prior to March of

18  2017 is addressed at 20 CFR Section 416.927(c).

19        The first opinion at issue is by Dr. Sobia Mirza

20  from September 5, 2018.  That appears at 595 and 596 of the

21  Administrative Transcript.  The opinion reflects a marked

22  limitation in maintaining regular attendance without

23  interruptions from psychological bases symptoms.  I think

24  that probably should be psychological based symptoms.  Marked

25  is defined as, "There is a serious limitation in this area.

*Decision - 2/24/2021 - 19-cv-1344*                    13

1   There is a substantial loss in the ability to effectively

2   function, the loss would be greater than 33 percent."  There

3   is also medium limitation in Dr. Mirza's report in the fields

4   of maintaining attention and concentration, and ability to

5   interact appropriately with the general public.

6           The opinion of Dr. Mirza was addressed at page 21

7   of the Administrative Transcript and it was given limited

8   weight.  The reasons cited include that it is based solely on

9   plaintiff's reports.  There is no indication that plaintiff

10  was frequently absent from counseling, and therefore in the

11  Administrative Law Judge's view, that would translate into a

12  finding that she would also not likely be absent from work.

13  She also pointed out that Dr. Mirza was not able to fully

14  assess mental functioning, according to her own medical

15  source statement, and that it was not supported by objective

16  evidence, including the many denials by plaintiff of

17  psychological symptoms, psychiatric symptoms, and plaintiff's

18  statements that her symptoms were controlled with

19  medications.

20          The factors to be considered under the former

21  regulations, specifically Section 416.927, are well-known.

22  They are the so-called *Burgess* factors in the Second Circuit.

23  The Second Circuit has noted, however, in *Estrella versus*

24  *Berryhill*, 925 F.3d 90, from May of 2019, that the failure to

25  consider explicitly the *Burgess* factors is not necessarily

1  fatal if a searching review of the record assures that the

2  treating physician rule is not violated.

3           Of course, as plaintiff argues, Dr. Mirza appears

4  to qualify as a treating source, and ordinarily the opinion

5  of a treating source or treating physician or acceptable

6  medical source under the former regulations regarding the

7  nature and severity of an impairment is entitled to

8  considerable deference if it is supported by medically

9  acceptable clinical and laboratory diagnostic techniques and

10 is not inconsistent with other substantial evidence.  Such

11 opinions are not, however, controlling if they're contrary to

12 other substantial evidence in the record, including the

13 opinions of other medical experts.

14           And, of course, as I previously noted, where there

15 are conflicts, the resolution is properly entrusted under

16 *Veino* to the Commissioner.  If controlling weight is not

17 given to a treating source opinion, the *Burgess* factors must

18 be addressed and there must be an indication of what weight,

19 if any, is given to a medical source opinion.

20           In this case the form is a check-box form with no

21 explanation provided.  I do note that defendant argues that

22 the reliance solely on the subjective complaints of a

23 plaintiff is not a proper basis to reject those opinions.

24 Those cases that are cited are *Roma versus Astrue*, 468

25 F.App'x 16, and *Dailey versus Commissioner of Social*

*Decision - 2/24/2021 - 19-cv-1344*                    15

1    *Security*, 2016 WL 922261 (N.D.N.Y February 2016).

2           I might agree with that when it comes to a physical

3    impairment, but in terms of a mental impairment, it's fairly

4    clear that plaintiff's statements and the observations of

5    medical professionals are important to consider as plaintiff

6    has argued.  *Flynn versus Commissioner of Social Security*

7    *Administration*, 729 F.App'x 119 (2018) supports that

8    conclusion, as well as *Stacey versus Commissioner of Social*

9    *Security Administration*, 799 F.App'x 7 (2020).

10          So I reject this part of the Commissioner's

11   argument.  However, I do find that the reasoning of the

12   Administrative Law Judge for giving limited weight to

13   Dr. Mirza's opinion is explained sufficiently when you read

14   the decision as a whole, which goes through considerably the

15   treatment received.  I find the reasoning is well set out and

16   a searching review of the record convinces the Court that the

17   treating source rule is not violated in connection with

18   Dr. Mirza's opinions.

19          The next opinion cited by the plaintiff is from

20   Counselor Hagerbaumer, and that was given on August 21, 2018.

21   It appears at 405 to 406 of the Administrative Transcript.

22   It is extremely unclear because on both pages the counselor

23   has drawn a line through the check-box areas and written,

24   quote, "unable to assess per clinic policy," but then she

25   goes ahead and finds extreme limitations in certain areas,

1   including accepting instructions and responding appropriately

2   to criticism from supervisors, getting along with co-workers,

3   ability to respond appropriately to ordinary stressors in a

4   work setting with simple tasks.

5         The counselor also notes sporadic suicidal ideation

6   and history of auditory hallucinations, but states that the

7   main issue is her inability to cope with her reactions caused

8   by external stressors.  She also has a learning disability

9   which causes limitations in her daily functioning.  To some

10  degree, as the Commissioner has noted, these limitations are

11  accommodated in the residual functional capacity finding.  I

12  note that under the former regulations, the counselor is not

13  an acceptable medical source and her opinions are, therefore,

14  not subject to the treating source rule.

15        I agree that there seems to be a disparity between

16  the statement that she cannot assess and the finding that she

17  did, in fact, assess.  But as I said, the concerns appear to

18  be the effect of stressors and her learning disability, and

19  as I said, those are accommodated in the residual functional

20  capacity.  She is also limited in her interaction with

21  others, including the public and her supervisor, and those

22  are accommodated as well in the residual functional capacity

23  finding.  So I find no error in consideration of this report.

24        The next report considering plaintiff's psychiatric

25  conditions is the report of consultative examiner, Dr. Sara

1   Long, a psychologist, and it appears at 392 to 396 of the

2   Administrative Transcript, and the results from a

3   consultative examination on August 16, 2016.  The medical

4   source statement finds, "Mild to moderate limitations

5   regarding following and understanding simple directions and

6   performing simple tasks.  She was able to maintain attention

7   and concentration.  She appears able to maintain a regular

8   schedule.  She is able to learn some new tasks.  Regarding

9   complex tasks and making appropriate decisions, there appear

10  to be marked limitations.  It is not clear that she is

11  relating adequately to others.  Her psychiatric symptoms

12  might cause problems in this area.  She presents with low

13  stress management."  It goes on to say that, "The results of

14  the present evaluation appear to be consistent with

15  psychiatric history of substance abuse problems which appear

16  to interfere with her ability to function on a regular

17  basis."

18          The report of a consultative examiner such as

19  Dr. Long is entitled to weight and can provide substantial

20  evidence for a determination.  The Administrative Law Judge

21  in this case afforded substantial weight, or significant

22  weight, I should say, to Dr. Long's opinions at pages 20 and

23  21 and also again discussed at page 22.  The residual

24  functional capacity finding addressed many of the limitations

25  identified by Dr. Long, including judgment and relating to

*Decision - 2/24/2021 - 19-cv-1344*                    18

1   others, and decision-making.  As the Commissioner points out,

2   unskilled work requires little to no judgment; 20 CFR Section

3   416.968(a).  The residual functional capacity finding once

4   again accounted for stress and the limitation on the

5   interaction.

6           So I find no error in the consideration of

7   Dr. Long's opinion, and I find that Dr. Long's opinion does

8   provide substantial weight to support the resulting

9   determination of the Commissioner.

10          The next decision considered or opinion considered

11  is that of Dr. S. Juriga, a psychologist.  That appears at

12  Exhibit 3A.  He is a non-examining state agency consultant.

13  His opinion was rendered in September of 2016.

14          He finds moderate limitation in several areas,

15  including ability to understand and remember detailed

16  instructions; the ability to carry out detailed instructions;

17  the ability to maintain attention and concentration for

18  extended periods; the ability to perform activities within a

19  schedule, maintain regular attendance, and be punctual within

20  customary tolerances; the ability to sustain an ordinary

21  routine without special supervision; the ability to perform

22  and to complete a normal workday and workweek without

23  interruptions; the ability to accept instructions and respond

24  appropriately to criticism from supervisors; and the ability

25  to get along with co-workers or peers without distracting

1    them or exhibiting behavioral extremes.

2             The summary of mental residual functional capacity

3    finding, which is what controls, appears 104 and 105 of the

4    opinion, and the summary is retains the ability to perform

5    entry level work, which, as the Commissioner has argued,

6    equates to simple unskilled work.  It is true that there is

7    no explanation given in certain portions of the worksheet,

8    but the residual functional capacity is what controls once

9    again, and it's summary and conclusions support the residual

10   functional capacity.

11            Many of the moderate limitations are also accounted

12   for in the residual functional capacity.  Granted, I would

13   like to see a more fulsome discussion in the residual

14   functional capacity finding, especially without explanation

15   or finding of certain of the moderately limited categories

16   set forth in the work sheet.  But I find that it does

17   adequately address the residual functional capacity and

18   support the ability to perform unskilled entry level work,

19   which is the same; *Tollison versus Colvin*, 2013 WL 3367101,

20   from the Middle District of Tennessee, July 5, 2013, and

21   that's addressed at note 8.  I find that the residual

22   functional capacity does pass muster.  *Carver versus Colvin*,

23   600 F.App'x (10th Cir. 2015).  It is well-accepted that a

24   non-examining consultative examiner's report can constitute

25   substantial evidence and overlie even a treating source if it

1   is properly supported.  *Netter versus Astrue*, 272 F.App'x 54

2   (2d Cir. 2008).

3           As I indicated, it's well-accepted that moderate

4   limitations are not inconsistent with the ability to perform

5   unskilled work.  *Richard H.*, 2020 WL 467734, from the

6   Northern District of New York, January 29, 2020.  And in that

7   case the proposition is said to be supported by *Zabala v.*

8   *Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).  Plaintiff relies

9   on the Program Operations Manual Systems, or POMS, to argue

10  that the worksheet is not sufficiently detailed in this case,

11  and, of course, the POMS are not binding either on the

12  Commissioner or the Court.  One focus of the plaintiff is the

13  inability of her to apply for and be hired for a job.  As the

14  Commissioner's argued, that is not dispositive; 20 CFR

15  416.966.

16          I do note that the ALJ did not rely solely on

17  Dr. Juriga for her residual functional capacity finding.  She

18  considered Dr. Long's opinion, as well as the entire record,

19  which is generally supported by treatment notes discussed at

20  length at pages 22 and 23 of the Administrative Transcript.

21  It is true that Dr. Juriga's opinions come from 2016 and

22  predate some of the psychological treatment and

23  hospitalizations, but when you consider the entire record, it

24  does not appear that there was a significant decline, and, in

25  fact, consideration of later treatment notes show some

1  improvement.

2          The last opinion discussed by the plaintiff is from

3  Dr. Krantweiss, Dr. Adam Krantweiss, from November 18, 2017.

4  It appears at pages 598 to 602 of the Administrative

5  Transcript, and it addresses the plaintiff's level of

6  intellectual functioning, academic achievement, and adaptive

7  behavior.  There are several findings.  One finding is it is

8  expected that she would not succeed across many work

9  settings, she cannot technically be classified as

10 intellectually disabled, and it indicated that she should be

11 limited to a job requiring very basic capacity to read, spell

12 words, or perform mathematical calculations.

13         The opinion was discussed at page 21 of the

14 Administrative Transcript by the ALJ and given limited

15 weight.  It was noted that Dr. Krantweiss admitted that his

16 findings were speculative, but it also showed that plaintiff

17 has a basic ability to perform unskilled work, and the

18 limitations, the intellectual limitations that were cited are

19 accounted for in the residual functional capacity finding.

20 Once again, the act of finding of work is not relevant.  20

21 CFR Section 416.966, and *Morrow v. Astrue*, 2010 WL 3259988,

22 from the Northern District of New York, July 30, 2010, that's

23 addressed at footnote 5.

24         So I don't find any error in the consideration and

25 weighing of the various medical opinions in this case,

1  including those of treating source Dr. Mirza.  The step five

2  finding of the Commissioner is supported by substantial

3  evidence.  I find that the Commissioner did carry his burden

4  at that step by relying on the testimony of a vocational

5  expert who was posed a hypothetical that parallelled the

6  residual functional capacity finding, which I do find is

7  supported by substantial evidence.

8          I agree with the Commissioner that the Court is

9  simply unable to say that in this case no reasonable

10  fact-finder could conclude as the Administrative Law Judge

11  did; or put another way, a reasonable fact-finder would have

12  to conclude that plaintiff is incapable of performing the

13  work identified by the vocational expert.

14          So I will grant judgment on the pleadings to the

15  defendant and order dismissal of plaintiff's complaint.

16          Thank you both.  Please stay safe.

17                    *              *              *

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

       I, EILEEN MCDONOUGH, RPR, CRR, Federal Official
Realtime Court Reporter, in and for the United States
District Court for the Northern District of New York,
do hereby certify that pursuant to Section 753, Title 28,
United States Code, that the foregoing is a true and correct
transcript of the stenographically reported proceedings held
in the above-entitled matter and that the transcript page
format is in conformance with the regulations of the
Judicial Conference of the United States.

_____

EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter